Lodge v. U.S. Attorney General, Mr. Endorff. Good morning, Your Honors, and may it please the Court. My name is Andrew Endorff of Hall, Well, Schuster & Goldberg, and I am pro bono counsel for Petitioner, Mr. Robert Lodge. Mr. Lodge was born in Jamaica to parents who never married. His mother abandoned him at a young age, and when he was 12 years old, he came to the United States to live in the custody of his father, who had recently naturalized as a United States citizen. You know, we've held in Levy that paternal acknowledgment at birth counts as legitimation under Jamaican law. I know you dispute whether that is holding. It's really kind of hard for me to see how it's not. Of course. So this goes to the Court's request for supplemental briefing as to whether or not there's an injury in fact here and whether or not there's Article III standing. And as the government agrees, there is an injury in fact here because Mr. Lodge's paternity was not established by legitimation for purposes of Clause 2 of 1432a3. And the lead decision there is the Matter of Cross decision as well as the Matter of Pines decision. It's true, though, isn't it, that Lodge's father acknowledged paternity at birth. His name appears on the birth registration form. His mother swore that Lodge's father supported Lodge fully and completely from birth. And it seems to me that we've decided in Levy that that form of acknowledgment counts as legitimation. Those facts are true regarding the birth certificate and regarding the acknowledgment of paternity. But to the extent Levy addressed this in a footnote, again, Levy was not focused on Clause 3. We do. Unfortunately, we have too many footnotes around here, but that doesn't mean that they don't decide things. Right. Well, then, we would respectfully submit that it was incorrect. I'm not sure if this issue was fully agreed to in Levy. Well, incorrect isn't an option for us. I mean, if that's been decided by a three-judge panel, then we're bound by it. Well, I would respectfully submit that a footnote addressing an apparent theoretical application of Jamaican law would not be binding, particularly where, in that case, it didn't bear on the holding. In that case, you were focused, of course, on Clause 1 of 1432A.3, which was the legal separation and legal custody requirement. Here we're traveling under Clause 2, where legitimation is directly at issue in the statute. Now, the BIA's decision in matter of cross is not only authoritative here under Chevron and persuasive under Skidmore, but it's also just the right decision. And the reason for that is twofold. If you look at the—there's a paradox that results. If you were to adopt the same definition of legitimation in 1101C as you would in the definition of legitimation for 1432A.3, right? Jamaican law, there are two statutes that are relevant here. There's the Jamaican Legitimation Act of 1961, which says that in order for a child to be legitimated under Jamaican law, which is what governs here, Jamaican law, then the child's parents need to marry. The second statute that came into play here is the Jamaican Status of Children Act of 1976, which simply eliminated the discrimination between legitimate and illegitimate children. So, for example, illegitimate children may be able to derive property rights. As the court explained in matter of cross, if you were to apply the same definition of legitimation to both the definitional provision and Clause 2, you would result in a paradox where no child from Jamaica would ever be able to derive citizenship through a single parent. And that can't be what Congress intended here, which is why we should treat the legitimation definition in Clause 2 as a barrier to citizenship and follow Jamaican law, which to this day still requires legal marriage. So just to round out, Your Honor, again, we respectfully submit that the footnote in Levy is dicta. This court should not feel bound by it, particularly where it conflicts with the authority of the BIA and where it's applying Jamaican law. This isn't a circumstance where the court was applying U.S. laws, applying Jamaican law, and this is an opportunity for the court to correct that. Now, so that issue goes to the Article 3 standing issue, which is, you know, the only standing issue that the court needs to reach in this appeal. But there's, I want to be sure to address the prudential standing issue that Tell me this. Can legitimation ever come up in the opposite way? I mean, we're always going to know who the mother is, aren't we? So as the Supreme Court explained in Wynne, right, it doesn't make sense to impose a legitimation requirement on mothers because the relationship is made by birth, right? Yeah, I understand that. So you know, we're dealing with a problem where it's not so much as a classification on the basis of sex. It's just a fact that can only arise by virtue of biology, I guess. Well, we would disagree with that. I think there is very clearly discrimination on the basis of sex here. If the circumstances were reversed, if, for example, Mr. Lodge's mother was the one who came to the United States and naturalized as a U.S. citizen and his father abandoned him, there's no dispute between us. And his father what? And his father had abandoned him. There's no dispute between us and the government that Mr. Lodge would be a citizen today. I didn't think abandonment was the test. I thought it was legitimation was the test, right? No, yes, yes, you're right. I was simply describing a circumstance in which. You want us to be corrected through some kind of custody requirement, but that's not what's in the statute. Right. And the thing I'm trying to figure out is, is this really sex discrimination when just it's just as a matter of fact, this is only going to arise. The way you understand legitimation is it's only going to arise when we don't know who the father is. Well, in this circumstance, again, we have to look at the statute. We're always going to know who the mother is. In this circumstance, we have to look at the statutory text and the statutory text allows a mother to transmit citizenship to an out of wedlock child when paternity is not established by legitimation. What that statute does effectively is creates a proxy for this is our lead argument for circumstances in which it's fair to assume that the father is out of the picture. Is there a situation where maternity is not going to be established through legitimation? I mean, that's my question. It doesn't make sense to speak about legitimation with respect to a mother in that context. And so, fine, if we're traveling down that road, let's talk about when, because when is principally the case the government relies on to discuss that. And that's this concept that there's a real difference and it makes sense to require fathers to acknowledge paternity. But when is substantially different and we would submit requires this court to reach the opposite result here. And when we are dealing with section 1409 and what's important about that statute is that it allowed both mothers and fathers, that's critical, both parents to transmit citizenship to their out of wedlock children. And all it did is say that if a father wishes to transmit citizenship, the father must take some additional step of acknowledging the child or of legitimating the child in order to do so. And the Supreme Court said that survives intermediate scrutiny because it is a minimal burden on fathers and it's rationally related to the establishment of a filial tie. The difference between when and this case is that 1432A3 presents a categorical bar to any father that wishes to transmit citizenship to an out of wedlock child. And acknowledging paternity or establishing a filial tie has nothing to do with that. There is, and so it's substantially different from when where the filial tie or the establishment of a paternal acknowledgement, that was a key to open a door to transmitting citizenship. And in Clause 2 here, there is nothing a father can do short of forcibly marrying the child's wife and separating in order to transmit citizenship here. Turning to, is this court, I want to make sure we have limited time, if this court is standing, I want to be sure to do so. If the court has no concerns about third-party standing, then I'll move on. I mean, he may have a problem with third-party standing on, I think, on the gender claims, the sex claims. I'm not sure he does with respect to the race claims, but with respect to the gender claims. So that would be my first point, of course. Prudential standing, it's not an Article III doctrine, and it only would have potentially applied to the gender claim, not the race claim, which is a direct challenge. Is his father alive? His father is alive, yes. So what prevents him from being the one who sues? Right, so we'll assume the close relationship test is satisfied for the same reasons in Morales-Santana and for many of the other reasons that the Supreme Court has extended third-party citizenship. The nexus between the injury to his father and the injury to Mr. Lodge is tighter here than in many other cases where the Supreme Court has allowed third-party standing. In the Eustairshe cases, for example, where the nature of the relationship is indirect, here it's inextricably linked. But the problem is maybe on the hindrance prong. On the hindrance prong, there still is a hindrance here. There's no pathway today that I'm aware of by which Mr. Lodge's father could bring an action that would result in a declaration of citizenship for his son. The only vehicle that I'm aware of is 8 U.S.C. section 1503A, which allows for a party to bring a declaration, a declaratory action in U.S. district court. But that statute explicitly says that once a removal proceeding begins against the person whose citizenship is at issue, then the district court is stripped of jurisdiction to further consider it. And that's part of the REAL ID Act, of funneling all of these citizenship questions into the removal process and the petition for review process. But then in every case, in every case then, once the removal process had begun, there would be third-party standing, right? Right. I think in a case like this, in a case challenging citizenship based on the father's gender, there would be third-party standing. And there is third-party standing here. And Judge Rosenbaum, I think . . . But what cases do you rely on for that? Well, I'm not aware, actually, of any cases that directly allowed a father to, you know, I guess what, intervene in a petition for review on behalf of a child. So I just don't believe it's possible. We haven't seen it. And it's certainly a hindrance. So you're saying it's clear that the bar, because of the initiation of removal proceeding, removal proceeding applies to the father's ability to file a DEC action? Well, so if you look at the statute, and I'll just read it for you, it is clear that the jurisdictional bar that results turns on the person whose citizenship is at issue. It says, except that no such action may be instituted in any case if the issue of such person's status as a national of the United States, that's Lodge here, arose by reason of or in connection with any removal proceeding or is in issue in any removal proceeding. And the last point I'll make on this, well, maybe two more points, is an important one.  Mr. Lodge is defending against removal by asserting a claim of citizenship. And Congress said very, very clearly in 8 U.S.C. section 1252b5 that in that circumstance, when a petitioner defends against removal by asserting a claim, the court shall decide the citizenship claim. That's very clear instruction from Congress. And it gives this court not only jurisdiction, but a mandatory nature of deciding the citizenship claim. And I'll just note for what it's worth, the government forfeited this argument. The government didn't raise it in its opening brief. And so effectively what the government is asking you to do here is to relax one prudential rule, the doctrine of forfeiture, in order to strictly enforce another prudential rule, the third-party standing doctrine, which we believe we've satisfied, in order to avoid deciding a constitutional claim that Congress has instructed this court to decide. So we don't believe there are any standing hurdles that prevent this court from reaching the merits. I see that my time is up. I'm happy to answer further questions. I also know, of course, Judge Hall, you're new to this case, so if you have any background questions, happy to oblige. Thank you, Mr. Indore. You have saved a couple of minutes for rebuttal. Let's hear from Ms. Lee. Thank you. Good morning, Your Honors. May it please the Court? Senator Lee, representing the Attorney General. Your Honors, when we submitted our position about the standing issues, we unfortunately had not noticed the footnote in Levy, so we apologize for that. What's your position about it now that you have had an opportunity to review it? Well, considering that the court views that as binding. Do you doubt that it is? Well, the... Here's what we said. We said the second clause, quote, did not apply, right? Right, Your Honor. And we said, quote, because Levy's paternity was established by legitimation, end quote. It seems that that was necessary to the resolution. I'm having a hard time understanding how that's not holding, albeit in a footnote. Yes, Your Honor. I don't write footnotes, but I read them all the time. Right. Yes, we believe that that would be binding in light of there has been other cases in the Eleventh Circuit that says that additional holdings are considered precedent. And so in the Eleventh Circuit here, that would mean that Mr. Lodge has been legitimated. So our position that we submitted in the supplemental brief regarded the Board of Immigration Appeals' view on the issue regarding petitioners from Jamaica. So but now that we have been enlightened about this footnote, we believe that that footnote would control the litigation. Even if it's not binding, is it correct? Yeah, more fundamental question. I mean, your opponent says matter of, it's a matter of crosses, right? And the footnote is wrong that we misread matter of cross. What do you say about that? Well, Your Honor, I believe in Mr. Lodge's circumstances, if you read matter of cross and matter of hinds, cross appears to say that the Jamaican Legitimation Act applies to Mr. Lodge as far as the Jamaican Legitimation Act determines whether or not he has been legitimated for purposes of the derivative citizenship statute as opposed to whether you're considering if he's a child or not under the INA Section 101. So I'm not sure I understood that. Can you explain what you meant by that a little bit? Can you elaborate? I'm not sure I followed it. Well, under matter of cross. Matter of cross said, did it not, that paternity under Jamaican law can be established by legitimation only through the affirmative act of parental marriage, right? Isn't that what matter of cross said? Well, as a, when you're considering the definition of child under INA Section 101, so that the statute that, in Jamaica, that said that there's no legal distinctions between children who have been legitimated or not under, I'm sorry, it eliminated distinctions. Can I ask you a question about that though? Because I mean, it seems to me that if the controlling authority on whether a child has been legitimated under Jamaican law is the 1976 Act, I guess, right, the status of children, then every single child necessarily in Jamaica has been legitimated, right? Does that, I mean, maybe that's okay. I don't know. But it seems like maybe that's a problem. I think that that is true, but it depends on what issue you're looking at. So for purposes of the derivative citizenship, former statute that we're considering here today, the board determined that the newer statute didn't control that issue. Instead, it was the Jamaican Legitimation Act, which retained the marriage requirement. To say that a child is legitimated only, I'm sorry, only when the parents later marry. And that was the only way to legitimate the child for these other purposes, which I believe may have applications to things like inheritance and other matters. So in matter of cross, the board distinguished between these two statutes and the two Jamaican statutes and also the two provisions of the INA that they were comparing. And so in matter of cross, they were considering whether the petitioner was a child for purposes of visa preference under INA section 101. And then in matter of hinds, the board was looking at derivative citizenship under the statute that we're considering today, the former. And what did it say, matter of hinds? In matter of hinds, the board said that you look to the Jamaican Legitimation Act. Which says... Which is the modern law or the old law? Marriage one. It was older. The marriage act. Yeah, yes. The Jamaican Legitimation Act, I believe, is much older, decades older than the 76 law. So, but if, let me say, if it comes down to whether or not the footnote two in Levy is dicta or not, if it's not dicta, it doesn't matter whether we got it right or wrong in Levy, right? I mean, we don't have a choice. We must apply it. Isn't that right? Yes, Your Honor. So then the question is whether it's dicta or not. What is your position? I know you were asked a little bit about this before, but what is your position on that? Well, Your Honor, unfortunately, I didn't have a chance to delve into this particular issue of whether that's dicta or not. But I do know that we have a case in our answering brief that says that in the circuit, additional or alternative holdings are not dicta, but instead are as binding as solitary holdings, which was Bravo versus United States, which was decided in 2008. So that seems to apply to this footnote in matter of Levy. But the government would be willing to brief the dicta, whether it's dicta, further, if the court would like to see further briefing on that. That's the question you asked. I heard a brief already. What else would you like to say, Ms. Lee? Well, Your Honor, if the court determines that a footnote is dicta, Mr. Lodge's claims should still not prevail because he has not shown that the statute discriminates based on sex or race. And as far as the gender claim goes, there is not a sex-based classification, but rather, as Judge Pryor stated earlier, it's based on the difference in how you acknowledge who you know the parent is. So for mothers, based on birth and with fathers, it's, you know, there's a requirement to show that paternity was established by legitimation. So that is the only classification here. So it's not a strict sex-based classification. And the Levy did determine that that classification, that there was an important purpose behind that classification in that the government wished to protect the interests of the non-naturalizing parent. Because if you were to grant the child derivative citizenship automatically when the non-naturalizing parent is still in the picture, that would deprive the person, the non-naturalizing parents of the rights to the child. And so that was an important purpose that the Levy case held, justified the distinction in Clause 2. And it also determined that that was the purpose of the whole subpart three of the statute. So Clause 1 and Clause 2. And Mr. Lodge has not presented any legislative history showing the intent of the drafters of the statute that they had discriminatory intent. And then as far as the race claim goes, he has not presented any contemporaneous legislative history about the statute. He instead refers to old statements by individual legislators and referring to prior versions of the Immigration and Nationality Act. And there's no proof that he's provided showing that the drafters of 1432A3 had a discriminatory purpose when they were drafting that statute. And neither has he presented evidence of a disparate impact to black persons who may have been affected by the statute. And as far as the standing goes, Mr. Lodge is presenting a claim on behalf of his father. And so as Judge Pryor stated, Mr. Lodge's father has not brought a claim on behalf. Well, he says that now that his client's in removal proceedings, he's barred from doing so. What do you say about that? Is that right? I don't think that that would be right, Your Honor. I believe there could be a way that he could raise that claim. What would it be? He said that ordinarily the father could bring a declaratory judgment action, but he says that, I've forgotten what, we have so many of these statutes. One of the more recent revisions of the immigration laws, he says now the bars that consideration, that derivative citizenship declaratory judgment action when removal proceedings have begun. You say you don't believe that's right. What can you point me to? Well, Your Honor, I'm not aware of that specific statute. I believe that he would be able to bring such a claim in district court. And as far as I know, he's never brought such a claim before the court. And so I think that both the gender and the race claims, they're tied together. So Mr. Lodge is primarily challenging the gender claim, but he's also adding in a race factor to that. And so I think that would have to be brought by the father. And Mr. Lodge doesn't have the standing to do so, as we've stated. Well, I think we understand, Ms. Lee. Let's hear two minutes from Mr. Endel. Thank you, Your Honors. I'll be brief, because I only gave myself two minutes. Levy is not binding. The footnote there is not binding. It's simply, it's a footnote with a parenthetical opining on foreign law. That's not necessary to the court's analysis and to the holding, which focuses strictly on the first clause of 1432a3. But can I ask you a question about that? Here's why, and I'm not sure it's quite that easy. The challenge that Levy brings is about whether 1432a unconstitutionally discriminates against him based on gender. And the court says, the court decides which particular provisions of 1432a to consider in that, based on the fact that it concludes he is legitimated. It says, as a legitimated child, Levy could derive citizenship under 1432a only if, and then it lists the ways that it could happen. The court would have been required to consider other ways that Levy could derive citizenship under 1432a if he had not been legitimated. So why isn't that part of, why isn't that necessary to the holding? Well, again, so I haven't read the briefing in that case. Obviously, Chief Judge Pryor, you read the briefing in that case because it's unavailable. And I just don't know to what extent this was really litigated and decided. I'll submit this. It is plainly incorrect. It would result in a paradox. It would strip single-parent derivative citizenship out of the statute entirely. I agree it's incorrect. But as you know, if it's binding, then we're stuck with it. Well, yes, I mean, I think I understand that it is a footnote, right? I mean, there are ways by which courts can wriggle out of this having been in these shoes before. This is just not necessarily something that this court needs to stick with. And if I could just make a couple of quick points very, very briefly with your indulgence. This is also an issue where the court is required to defer to the BIA under Chevron, under Gonzales. This court affirmed that the BIA's interpretation of an ambiguous regulation is subject to Chevron deference. Chevron deference, for what it's worth, is still alive. And there's no evidence in Levy. That's true. I mean, but the problem is Levy was purporting to apply a matter of cross. I understand. If Levy was going to disagree. It would be one thing if we had a determination from the board that was an intervening law issue, in which case, maybe or maybe not, I'm not sure we could, but maybe or maybe not, we could revisit. But as a three-judge panel bound by prior panel precedent, I'm just not sure we can do that here. When matter of cross came before. Of course, matter of cross came in 2015. It is a footnote in 2018. And offhand, it did comment here that we don't think is binding. If the court were intending to disagree with matter of cross and to overrule Chevron deference, it would have engaged in a more intense statutory analysis, which it could have done, and it did not do. This is also not Bravo. That footnote is simply not on alternative holding. I just respectfully submit that this is not typically how courts, you know, resolve important questions. They don't bury them in a footnote with a parenthetical without any analysis. I don't think that's necessary. I promise you, Mr. Endor, the footnote argument is not a persuasive one. I mean, you know, I'm not trying to be hard on you. I know you've taken this case pro bono and you've done a fine job this morning, but there are holdings that are in footnotes of the Supreme Court and this Court all the time. OK, just going forward, be aware of it. Yeah, of course, of course, I'm aware and I just would recognize that I think what the court did was quickly make an assumption about which of these two clauses it was traveling under without perhaps engaging in a full analysis. The last very brief point, the government made some comments on our race claim. If it with your indulgence, just two quick comments on that. I want to point out that the legal standard the government points to in its brief on that claim is incorrect. We're under 1252 B5. That means that the government bears the burden to show the absence of a material, a genuine issue of material fact. Under that standard, you know, we put forward the evidence from the contemporary statements and historical record, as well as evidence of disparate impact. The government responded to much of that evidence by putting in competing statistics, by disputing the reliability of our own evidence. That's a fact issue. It should be transferred to the district court under 1252 B5. And finally, I think the government fundamentally misunderstands the significance of the fact that under Jamaican law, Mr. Lodge is not legitimated. The government again relies on this concept that the law is treating as soon as a parent legitimates, a father legitimates, the law treats the mothers and fathers the same. That is not the case here, where under Jamaican law, Mr. Lodge's father did not establish paternity by legitimation. So there is clear gender discrimination in this case, and this court should remedy that in light of Morales-Santana, the intervening decision that your client, Mr. Indore, thank you. We are adjourned.